# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued November 14, 2023    Decided September 24, 2024

No. 23-7018

BROTHERHOOD OF RAILROAD SIGNALMEN,
APPELLEE

v.

NATIONAL RAILROAD PASSENGER CORPORATION,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:22-cv-00841)

*Donald J. Munro* argued the cause and filed the briefs for appellant.

*Richard S. Edelman* argued the cause and filed the brief for appellee.

Before: HENDERSON, MILLETT and PILLARD, *Circuit Judges*.

2

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: In 2017, the Brotherhood of Railroad Signalmen (the Union)—the designated bargaining representative for National Railroad Passenger Corporation (Amtrak) employees who perform signal and communications work—initiated proceedings in federal district court contesting Amtrak's refusal to commit to using Union-represented signalmen in a newly acquired building. The district court sent the case to mandatory arbitration under the Railway Labor Act (RLA), 45 U.S.C. § 151 *et seq*. The National Railroad Adjustment Board (the Board) dismissed the claim, concluding that it did not have jurisdiction because the Union was seeking relief based on hypothetical facts. On review, the district court vacated the award and remanded for further proceedings, holding that the Board did not consider or interpret the parties' agreement.

Amtrak appeals the district court's vacatur, arguing that the award should be upheld under the highly deferential judicial standard of review because the award is at least arguably based on rail industry common law incorporated in the parties' agreement and on Rule 56 of the collective bargaining agreement. Even under that limited standard of review, we affirm the district court and find that the arbitral award should be vacated because the award did not decide the dispute based on the parties' contract; instead it relied on legal principles governing federal courts' subject-matter jurisdiction, a matter wholly outside the scope of the Board's authority.

**I. BACKGROUND**

In 2015, Amtrak acquired the Railway Express Agency (REA) Building in Washington, D.C., in connection with a

3

planned expansion to Union Station. The Union asserted that communication and signal work in the REA Building should accrue to its members; Amtrak refused to commit to that position and argued the collective bargaining agreement did not cover the REA Building.

In 2017, the Union filed a complaint in federal district court alleging that Amtrak had violated the collective bargaining agreement by refusing to assign work in the REA Building to Union signalmen. *Bhd. of R.R. Signalmen v. Nat'l R.R. Passenger Corp.*, 310 F. Supp. 3d 131, 137 (D.D.C. 2018) (*Signalmen I*). Amtrak moved to dismiss for lack of jurisdiction, arguing that the dispute was "minor" under the RLA and therefore subject to binding arbitration. Def.'s Mem. at 1, ECF No. 7-1, *Signalmen I*, 310 F. Supp. 3d 131 (No. 17-1287). The district court agreed with Amtrak and dismissed the case. *Signalmen I*, 310 F. Supp. 3d at 138-141.

The Union then set out on the arbitration path and grieved, by letter, Amtrak's alleged violation of the collective bargaining agreement. Amtrak responded that the grievance was "procedurally defective" because it failed to identify specific allegations, claimants and remedies. J.A. 174. After further correspondence, the Union submitted the matter for arbitration before the Board. The parties submitted written briefs and supporting materials and Amtrak argued for dismissal on several grounds, including lack of jurisdiction, procedural defects and failure on the merits.

On December 15, 2021, the Board issued Award No. 44649 dismissing the Union's claim. The Board summarized the parties' positions, including Amtrak's contention "that the Claim must be dismissed because it is procedurally defective; the original Claim named no Claimants; identified no specific work and requested no

4

monetary relief." J.A. 17. But "[m]ore importantly," the Board explained, "the original claim requests what is essentially a declaratory judgment, inasmuch as the statement of claim now before the Board is asking for future work to be assigned to [Union] members." J.A. 18. The Board continued:

> The Board does not have jurisdiction to interpret and apply the Agreement to future situations, the facts of which are unknown. Declaratory judgments and injunctive relief are beyond the jurisdiction of the Board, whose "function is to resolve claims arising from established or determinable facts and issues." PLB No. 1202, Award No. 1. . . .
>
> The Board agrees with the Carrier [Amtrak] that the claim is a request for an advisory opinion and is therefore beyond the Board's jurisdiction.
>
> *It is a fundamental principle of jurisprudence—something that first-year law students learn in the first semester of Civil Procedure—that there must be a case in controversy before a lawsuit can be filed; the fact that an entity* might *do something in violation of a contract is not enough to establish a right to sue for breach of that contract.* In this claim, there is no contention and no evidence that the Carrier has assigned any communications work at the REA Building to anyone, much less to non-[Union]-represented employees.
>
> The Organization [Union] is asking the Board to rule on a hypothetical set of facts that has yet to materialize. The Board's jurisdiction is limited to actual controversies between the

5

> parties. Until such a controversy arises, the Board must dismiss the claim before it.

J.A. 18 (emphasis added).

The Union responded by filing a petition in the district court seeking review and vacatur of the arbitral award. The parties cross-filed motions for summary judgment. Amtrak argued that the award should be affirmed because it interpreted the parties' agreement, rather than defending it on the jurisdictional ground it raised before the Board. The district court noted the "exceedingly high" burden to vacate an arbitral award but faulted the award for (1) failing to acknowledge or cite to the collective bargaining agreement and (2) contradicting itself as to the basis for its jurisdictional conclusion because the award stated at the outset that it "ha[d] jurisdiction" but later concluded that the claim was "beyond the Board's jurisdiction." *Bhd. of R.R. Signalmen v. Nat'l R.R. Passenger Corp.*, 2023 WL 1469498, at *2-3 (D.D.C. Feb. 2, 2023) (*Signalmen II*). "Because the Court [could ]not conclude that the Board considered and interpreted the parties' agreement, and because Amtrak d[id] not defend the award on jurisdictional grounds," the district court vacated the award and remanded for further proceedings. *Id.* at *3. This appeal followed.[1]

---

[1] At oral argument, neither party could speak to whether there is currently any signalmen work being done at the REA Building. Counsel for the Union stated that the Union does not have "any role" in the REA Building, Oral Arg. Tr. 37:24-38:25, and counsel for Amtrak stated that he had no knowledge as to the current status of the building based on the record, Oral Arg. Tr. 40:25-42:15.

6

## II. ANALYSIS

Under Section 3 First (q), an arbitral award "may be set aside, in whole or in part, or remanded to the division, for failure of the division [of the Board] to comply with the requirements of [the RLA], for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or for fraud or corruption by a member of the division making the order." 45 U.S.C. § 153 First (q).

Our review is "very limited": "[I]f an arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (per curiam) (cleaned up); *see also Nw. Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 808 F.2d 76, 80 (D.C. Cir. 1987) (judicial standard of review of arbitral awards is "amongst the narrowest known to the law" (quotation omitted)). Our inquiry "is not whether the arbitrator or arbitrators erred in interpreting the contract; it is not whether they clearly erred in interpreting the contract; it is not whether they grossly erred in interpreting the contract; it is whether they interpreted the contract." *Hill v. Norfolk & W. Ry. Co.*, 814 F.2d 1192, 1195 (7th Cir. 1987).

An exceedingly narrow standard of review does not mean, however, that anything goes. *See Verizon Washington, D.C. Inc. v. Commc'ns Workers of Am., AFL-CIO*, 571 F.3d 1296, 1304 (D.C. Cir. 2009) (Henderson, J., concurring). The arbitral award "must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987). As this Court explained in *American Postal Workers Union v. U.S. Postal Service*, an

7

arbitral award does not draw its essence from the contract "[i]f the arbitrator . . . rendered a judgment based on external legal sources, wholly without regard to the terms of the parties' contract." 789 F.2d 1, 8 (D.C. Cir. 1986).

This case presents the rare circumstance in which the Board has wholly disregarded the parties' contract and improperly based its arbitral award on external legal principles. Thus, the Board's award warrants vacatur, as the district court concluded.

The arbitral award summarized the parties' arguments but then found a lack of jurisdiction based on the "fundamental principle of jurisprudence—something that first-year law students learn in the first semester of Civil Procedure—that there must be a case in controversy before a lawsuit can be filed." J.A. 18. There was no reference to the contract in reaching this conclusion and therefore no indication that the Board "looked to and relied on the proper sources of [its] authority." *U.S. Postal Serv. v. Am. Postal Workers Union*, 553 F.3d 686, 695-96 (D.C. Cir. 2009). The Board failed to even "purport to be interpreting the contract." *Madison Hotel v. Hotel & Rest. Emps., Loc. 25, AFL-CIO*, 144 F.3d 855, 859 (D.C. Cir. 1998) (en banc) (alteration omitted) (quoting *Util. Workers Union of Am., Loc. 246, AFL-CIO v. N.L.R.B.*, 39 F.3d 1210, 1216 (D.C. Cir. 1994)).

Instead, the Board invoked principles related to federal courts' subject-matter jurisdiction and Article III standing, legal principles wholly external to the parties' contract and beyond the scope of the Board's decisionmaking power. In our reading, the Board did not simply "analogize" to federal courts' subject-matter jurisdiction, but rather relied upon federal jurisdiction principles to conclude that it cannot "rule on a hypothetical set of facts that has yet to materialize," J.A. 18.

8

The award discussed a supposed "case in [sic] controversy" requirement grounded in the "fundamental principle[s] of jurisprudence" taught in law school, without reference to any Board procedural rule or regulation. *See* J.A. 18. The Board's reliance on constitutional limits regarding federal courts' subject-matter jurisdiction to decline to arbitrate the grievance on its merits is contrary to Supreme Court precedent and verboten under our standard of review.

In *Union Pacific Railroad Co. v. Brotherhood of Locomotive Engineers*, the Supreme Court addressed the differences between jurisdictional rules, which can never be forfeited or waived because they affect the tribunal's power to hear a case, and claim-processing rules, which are forfeitable even if obligatory and often take the form of pleading instructions. 558 U.S. 67, 81-85 (2009). The Congress has defined the Board's jurisdiction to include "all disputes between carriers and their employees 'growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions.'" *Id.* at 82 (quoting *Slocum v. Delaware, L. & W.R. Co.*, 339 U.S. 239, 240 (1950)). The Supreme Court in *Union Pacific* recognized that the Board may promulgate and enforce procedural claim-processing rules but found that it has "no authority to adopt rules of jurisdictional dimension," meaning that it cannot alter the jurisdiction set by statute. *Id.* at 84. It follows, then, that the Board may validly decline to resolve a grievance if it violates a procedural rule but may not decline to do so on jurisdictional grounds if the grievance falls within the Board's statutory jurisdiction.

Here, the grievance was premised on a dispute over whether the parties' contract extended to work in the REA Building, meaning it arose from a disagreement as to the meaning of the contract. The matter, then, fell squarely within

9

the jurisdiction the Congress assigned to the Board. *See* 45 U.S.C. § 153 First (i) (granting the Board jurisdiction of, *inter alia*, "disputes . . . growing out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions").

An arbitrator may, in the course of interpreting a contract, consider industry common law, which includes other arbitral awards. *See Transp.-Commc'n Emp. Union v. Union Pac. R.R.*, 385 U.S. 157, 161 (1966); *Pan Am. Airways Corp. v. Air Line Pilots Assoc., Int'l*, 206 F. Supp. 2d 12, 21 (D.D.C. 2002), *aff'd*, 62 Fed. App'x 356 (D.C. Cir. 2003) (per curiam). But in this case, the Board looked to arbitral precedent for a mistaken jurisdictional principle, not to determine industry common law. The cited award, Award No. 1, Public Law Board No. 1202, appears to be a decision made on jurisdictional grounds and does not invoke industry practice or custom. Nor does that precedent rely on or establish a procedural claim-processing rule. The cited award dismissed the dispute "for lack of jurisdiction" because:

> the exhibits do not serve to create an actual dispute where none exists and thus we are called upon to interpret and apply the agreement to future situations whose facts and issues are not yet known. The Board's function is to resolve claims arising from established or determinable facts and issues. The confronting protest does not present such a claim.

J.A. 90-91. But the Board does not decide the limits of its "function"; the Congress does. *See Union Pac.*, 558 U.S. at 84. Because the Board cannot adopt jurisdictional rules, Award No. 1, Public Law Board No. 1202, cannot sustain the award.

10

Moreover, even when arbitrators look to industry common law and arbitral precedent, they must do so in service of interpreting the contract. Our court has observed that an arbitrator "may 'look for guidance from many sources,'" *Nat'l Postal Mail Handlers Union v. Am. Postal Workers Union*, 589 F.3d 437, 443 (D.C. Cir. 2009) (quoting *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)), relying on Supreme Court language to that effect. The full rule announced by the Supreme Court, however, is that the arbitrator "may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award." *United Steelworkers of Am.*, 363 U.S. at 597. An arbitral award may be affirmed if the arbitrator uses outside legal sources in order to interpret the parties' contract. *See Pan Am.*, 206 F. Supp. 2d at 21-22 (affirming arbitral award because the Board properly "surveyed the industry common law and reviewed other arbitration decisions applying just cause provisions" "in an effort to inform itself and illuminate the contours of the just cause provision" in the parties' contract); *Nat'l Postal Mail Handlers Union*, 589 F.3d at 440 (affirming arbitral award because the Board used a "substantive background principle of law," the common law doctrine of continuing violations, "for help in construing the agreement"). Conversely, an arbitral award using legal sources unmoored from the parties' contract exceeds the Board's authority, as the award "cannot simply reflect the arbitrator's own notions of industrial justice." *Misco*, 484 U.S. at 38.

Here, the Board relied upon principles of Article III jurisdiction to dismiss the Union's grievance as beyond "[t]he Board's jurisdiction," J.A. 18, with no reference to the parties' contract. Its single citation to arbitral precedent on

11

jurisdictional rules—rules that the Board has no authority to create—manifests that, far from interpreting the contract, it was applying its own notion of industrial justice. Our standard of review means that our inquiry boils down to "whether [the arbitrator] interpreted the contract." *Hill*, 814 F.2d at 1195. Reviewing this arbitral award, we believe the answer is no.

In its submission to us, Amtrak advanced a position more restrictive than even our highly limited standard of review, contending that we must affirm the award unless either there is an explicit indication that the Board is not engaged in contract interpretation or, it seems, Amtrak cannot make a single non-sanctionable argument in favor of it. *See* Oral Arg. Tr. 10:23-11:3 (Amtrak counsel: "if . . . you would not sanction me for arguing that this arbitrator was relying on those contractual principles as opposed to an Article 3 standard or some statutory basis, then the Court should affirm the award"). Amtrak's position would wholly undermine judicial review of arbitral awards. Although the Board need not explain its reasoning at all, a reviewing court may of course review any reasoning it provides for its decision under the appropriate standard of review. Amtrak's position also elides the fact that we *do* have a sufficient indication that the Board did not interpret the contract. According to the text of the award, the Board based its decision on the jurisprudential principle of Article III jurisdiction, not on any contractual provision—whether express or implied as a matter of industry common law. There is, then, no "permissible route to the stated conclusion" that we can glean from the award. *Sargent v. Paine Webber Jackson & Curtis, Inc.*, 882 F.2d 529, 532 (D.C. Cir. 1989). Vacatur is therefore the proper remedy.

Amtrak also argues that Rule 56 of the parties' agreement, cited in the Union's original claim, provides a contractual basis for the award because it requires that grievances or claims must

12

be presented "by the employee or on his behalf" within 60 days "from the date of the occurrence on which the grievance or claim is based." J.A. 372. The Board, however, never mentioned Rule 56 and neither party suggested in arbitration that Rule 56 should be read to preclude grievances that do not name "the employee" as somehow hypothetical. We believe vacatur is proper here, where the Board "simply ignore[d] the contract," *Madison Hotel*, 144 F.3d at 859.

For the foregoing reasons, the judgment of the district court vacating the arbitral award is affirmed. The case is remanded to the district court with instructions to remand to the National Railroad Adjustment Board for proceedings consistent with the opinion herein.

*So ordered.*